UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                              Plaintiff,

        -v-

TRUSTY CAPITAL, INC.,

                              Defendant.

---

Case No. 06-CV-8170 (KMK)

OPINION and ORDER

Appearances:

Roslyn R. Mauskopf, Esq.
William B. Young, Esq.
United States Attorney's Office
Eastern District of New York
Brooklyn, NY
*Counsel for Plaintiff*

Andrea L. Mayer, Esq.
United States Small Business Administration
Washington, DC
*Counsel for Plaintiff*

Paul Scott Skurman, Esq.
William F. McCartin, Esq.
Sankel, Skurman & McCartin, LLP
New York, NY
*Counsel for Defendant*

R. Michael Haynes, Esq.
Semmes, Bowen & Semmes
Washington, DC
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff United States of America brings this action on behalf of the Small Business

Administration ("SBA"), alleging violations of the Small Business Investment Act, as amended,

codified at 15 U.S.C. §§ 661 *et seq.*  Plaintiff alleges that Trusty Capital, Inc. ("Defendant" or

"Trusty") has, in violation of applicable SBA regulations, failed to timely repay a $1,000,000 debenture guaranteed by SBA, issued loans without sufficient documentation and without regard to SBA valuation guidelines, and that Defendant continues to be in default on a preferred stock obligation of $1,025,000, not inclusive of any additional dividend obligations or interest. Plaintiff filed the Present motion on November 11, 2006, seeking to (1) preliminarily and permanently enjoin Defendant from violating the Small Business Investment Act of 1958 and regulations promulgated thereunder; (2) take exclusive jurisdiction of Defendant and all its assets; (3) preliminarily and permanently enjoin the present officers and directors of Defendant from disposing of its assets; and (4) appoint Plaintiff as permanent receiver of Defendant. Defendant opposes any appointment of a receiver.  For the reasons stated in this Opinion, Plaintiff's Motion for Injunctive Relief and Appointment of Receiver for Trusty is GRANTED.

## I.  Background

Trusty Capital, Inc. is a Specialized Small Business Investment Corporation ("SSBIC") that was incorporated in New York on September 15, 1987.  (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Inj. Relief and Appointment of Receiver ("Pl.'s Mem.") 3; Aff. of Yungduk Hahn ¶ 2 ("Hahn Aff.").)  Defendant's articles of incorporation state that Defendant "shall further operate in the manner, have the powers and responsibilities, and be subject to the limitations provided by the [Small Business Investment Act of 1958] and the regulations issued by the Small Business Administration thereunder."  (Aff. of Jerry W. Williamson ("Williamson Aff.") Attach. 2 at 2-3.) Defendant applied for a license to operate as a SSBIC in May 1989, which the Small Business Administration granted.  (Williamson Aff. ¶ 9; Hahn Aff. ¶ 2.)  SSBICs are companies similar to banks or other financial institutions which provide venture capital to qualified small independent

businesses.  (Williamson Aff. ¶ 6.)  Defendant's primary business is investing in Korean-owned businesses in the New York City metropolitan area.  (Hahn Aff. ¶ 7.)

On February 12, 1991, SBA financed Defendant by purchasing 1,025,000 shares of Defendant's preferred stock at a par value of $1.00 per share ("the Preferred Stock"). (Williamson Aff. ¶ 10, Attach. 3.)  At that time, SBA regulations required that any preferred securities purchased by SBA be redeemed "not later than fifteen years from the date of issuance."  13 C.F.R. § 107.205 (1991).[1]

On March 24, 1993, SBA provided further financing to Defendant by agreeing to guarantee the timely payment of all principal and interest scheduled on a $1,000,000 debenture ("the Debenture") issued by Defendant.  (Pl.'s Mem. 3-4; Hahn Aff. ¶ 3.)  The Debenture was originally scheduled to mature on March 1, 2003.  (Williamson Aff. Attachs. 3-4.)  Defendant failed to pay the Debenture on that date, and SBA paid $1,000,000 as guarantor.[2]  (Id. ¶ 15.)

On September 2, 2005, SBA notified Defendant by letter that Defendant had failed to pay the Debenture and demanded full payment, plus interest, within fifteen days.  Defendant wired $300,000 to SBA on September 15, 2005, but failed to cure the entire debt within the required time period.  SBA notified Defendant, by letter dated December 2, 2005, that, according to its

---

[1]Pursuant to 13 C.F.R. § 107.1820 (2006), preferred securities issued prior to April 25, 1994, are governed by the regulations that were in effect at the time the securities were issued.  13 C.F.R. § 107.1820 (2006) ("Preferred Securities issued before April 25, 1994 continue to be governed by the remedies in effect at the time of their issuance.").

[2]Mr. Hahn claims that the reason for this default was negligence on the part of SBA.  (Hahn Aff. ¶ 4.)  It is undisputed, however, that SBA, rather than Defendant, paid the amount of the debenture upon maturation.

3

authority under 13 C.F.R. § 107.203(b)(1),[3] it was declaring Defendant's entire indebtedness to SBA, including the remaining balance of the Debenture and the Preferred Stock, immediately due and payable.  (*Id.* ¶ 17.)  Although Defendant continued to transfer funds to SBA to pay off the Debenture, by May 2006 it still had an outstanding balance of over $300,000 on the Debenture and had failed to repay any of the Preferred Stock.  By letter dated May 4, 2006, SBA notified Defendant that it was being transferred to "liquidation status."  (*Id.* ¶ 18.)  On or around September 1, 2006, Defendant made the final payment on the Debenture, having ultimately repaid a total value of $1,143,245 on the Debenture, inclusive of interest.  Defendant still had made no payments on the Preferred Stock.  (*Id.* ¶ 19; Hahn Aff. ¶ 5.)

As of October 6, 2006, SBA claims it is owed (1) the principal on the Preferred Stock in the amount of $1,025,000; (2) accumulated dividends on the Preferred Stock of $563,365.41; and (3) a per diem dividend accrual of $112.33 for each day after October 5, 2006.

---

[3] 13 C.F.R. § 107.203(b)(1) (1991) reads in full:

> Upon written notice by SBA, the entire indebtedness and/or the principal amount of preferred securities of the Licensee issued to, held or guaranteed by SBA may be declared immediately due and payable to SBA upon the happening of any one or more to the following events:
>> (i) Default in the payment of the principal or interest, under any debenture, note or obligation of the Licensee, issued to, held or guaranteed by SBA;
>> (ii) Nonperformance or violation by the Licensee, as determined by SBA, or any one or more of the terms and conditions of any loan, obligation or preferred security of the Licensee, issued to, held or guaranteed by SBA, or of any agreement with or conditions imposed by SBA;
>> (iii) Failure of the Licensee, as determined by SBA, to comply with any one or more of the provisions of the Act or regulations promulgated thereunder, as they may be amended from time to time;
>> (iv) Failure of the Licensee to notify SBA within twenty days from the date of an event of default or nonperformance by the Licensee under any debenture, note or indebtedness of the Licensee issued to or held by anyone other than SBA.

In addition to the facts set forth above, Plaintiff also alleges that Defendant engaged in SBA regulatory violations by issuing three loans which it could not document were for business purposes and by failing to adhere to SBA valuation guidelines when issuing its loans.  (Am. Compl. ¶ 39; Pl.'s Mem. 6-7.)  However, Plaintiff has submitted no admissible evidence of these regulatory violations other than the allegations in its Amended Complaint.

Plaintiff filed the Complaint in this action on October 5, 2006.  On October 10, 2006, Plaintiff filed an Amended Complaint.  Plaintiff moved for injunctive relief and the appointment of receiver on November 11, 2006.[4]

## II.  Discussion

### A.  Motion for Preliminary Injunction

#### 1.  Standard of Review

Title 15, United States Code, section 687c controls the issuance of injunctions for companies licensed by SBA.  The standard for injunctions issued under section 687c differs from the traditional preliminary injunction test of a probability of success on the merits and irreparable harm.  *See United States v. Vanguard Inv. Co.* (*Vanguard I*), 667 F. Supp. 257, 261 (M.D.N.C. 1987) ("The Court observes that the usual requirements for preliminary equitable relief are supplanted by the specific mandate of 15 U.S.C. § 687c.").  Section 687c(a) states that:

> Whenever, in the judgment of the Administration, a licensee or any other person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this chapter, or of any rule or regulation under this

[4]On November 22, 2006, Defendant filed a cross-motion to dismiss the Amended Complaint insofar as it seeks relief for non-payment of dividends.  Defendant's cross-motion is not yet fully submitted, and it is otherwise irrelevant to Plaintiff's application for injunctive relief and for appointment of receiver.  Consideration of that motion has been stayed pending the outcome of the present motion.

> chapter . . . the Administration may make application to the proper district court of the United States . . . for an order enforcing compliance with such provision, rule, regulation, or order, and such courts shall have jurisdiction of such actions and, upon a showing by the Administration that such licensee or other person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction, restraining order, or other order, shall be granted without bond.

Thus, to receive a "permanent or temporary injunction, restraining order, or other order" under section 687c(a), Plaintiff must show that Defendant has engaged or is about to engage in "practices which constitute or will constitute a violation of the rules and regulations" issued by SBA pursuant to the Small Business Investment Act of 1958.

### 2. Analysis

Plaintiff alleges three violations of applicable SBA rules and regulations in the Amended Complaint: (1) the failure to pay the accelerated indebtedness to SBA, in violation of 13 C.F.R §§ 107.205(b)(3)(ii) (1991)[5] and 107.203(b)(1) (1991); (2) the provision of financing to three

---

[5] 13 C.F.R. § 107.205(b) (1991) states, in relevant part:
> (3) Additional requirements for nonvoting preferred securities Leverage. No nonvoting preferred securities may be purchased by SBA from any corporate section 301(d) Licensee on or after November 21, 1989 unless its articles make appropriate provision for the following additional matters:
>> (i) . . .
>> (ii) Mandatory redemption of preferred securities. Preferred Securities purchased by SBA on or after November 21, 1989 shall be redeemed by the issuer not later than fifteen years from the date of issuance, at a price not less than the par value, plus any unpaid dividends accrued to the redemption date. SBA may, in its discretion, guarantee debentures for sale at the last periodic debenture sale, before such fifteenth anniversary date, pursuant to section 321 of the Act, in such amounts as will permit the simultaneous redemption of such preferred securities, including all or any part of accrued and unpaid dividends, for immediate payment to SBA. SBA shall not pay any part of the interest on such Debentures except pursuant to its guarantee in the event of default in payment by the issuer.

6

entities where a business-use for the provided loans could not be established after audit, in violation of 13 C.F.R. § 107.500 (2006);[6] and (3) the failure to adhere to required valuation guidelines in issuing two separate loans, in violation of 13 C.F.R. § 107.503 (2006).[7]  Both the second and third purported violations allegedly were discovered during routine audits of Defendant performed by SBA on February 29, 2004, and September 25, 2005.[8]

It is unquestionable that Defendant has violated federal rules and regulations issued under the authority of SBA.  For example, Defendant has violated the rule that any preferred securities purchased by SBA be redeemed within fifteen years of their issuance.  *See* 13 C.F.R. § 107.205(b)(3)(ii) (1991).  Here, the Preferred Stock was issued on February 12, 1991.  Thus, to abide by SBA rules, the Preferred Stock had to be redeemed by February 12, 2006.  Defendant does not dispute that it has still not repaid the value of the Preferred Stock.  Defendant argues

---

[6]As this regulatory violation is not related to the Preferred Stock, it is governed by current SBA regulations.  13 C.F.R. § 107.500 (2006) states in full:  "You must engage only in the activities contemplated by the Act and in no other activities."

[7]13 C.F.R. § 107.503 (2006) states, in relevant part:  "(a) Valuation guidelines.  You must prepare, document and report the valuations of your Loans and Investments in accordance with the Valuation Guidelines for SBICs issued by SBA."

[8]Neither party has submitted a copy of these reports.  Defendant vigorously contests their findings, both in the affidavit of the President of Trusty, Yungduk Hahn, and the affidavit of Janna M. Laudato ("Laudato"), a former SBA employee who was previously responsible for oversight of Defendant.
    In its Reply Brief, Plaintiff argues that the submission of the affidavit of Laudato, a former SBA employee, violates SBA's regulatory prohibitions on the employment of former SBA officials, codified at 13 C.F.R. § 107.509 (2006).  (Pl.'s Reply Mem. 9-10.)  Defendant replied by letter stating that Laudato's affidavit was prepared voluntarily, and that Defendant had never employed Laudato.  (Letter from William F. McCartin to the Court, December 6, 2006.)  The applicable SBA rules prohibit SBICs from "retaining the professional services" of former SBA employees within two years of their departure from SBA.  *See* 13 C.F.R. § 107.509 (2006).  However, Plaintiff has submitted no evidence that Laudato's serving as a witness constitutes the provision of "professional services."  Therefore, there is insufficient evidence to conclude that Defendant violated the applicable rule.

that SBA has "failed to meet its burden of proof," however, because Defendant has repaid the

full value of the Debenture and because the appointment of the SBA as a receiver would

allegedly make the repayment of the Preferred Stock less likely.  Both arguments are irrelevant,

however, to the mandates of section 687c.

      As an initial matter, whether Defendant successfully repaid the Debenture does not

address the regulatory violation related to the Preferred Stock.  The mere fact that the Defendant

has attempted to cure another regulatory violation does not address its non-payment of the

Preferred Stock.  In addition, Defendant's late repayment of the Debenture does not eliminate

the regulatory violation that occurred upon its default.  Under the terms of the Debenture, it

matured, at the latest, on September 1, 2005.[9]  On September 2, 2005, Plaintiff notified

Defendant of its failure to pay and informed Defendant that it had 15 days to cure the non-

payment.[10]  (Williamson Aff. Attach. 5.)  Defendant sent a $300,000 payment to SBA on

---

[9]It is unclear when exactly the Debenture matured.  Jerry Williamson, a Financial Analyst in the Investment Division's Office of SBIC Liquidation, stated that the Debenture matured on March 1, 2003.  (Williamson Aff. ¶ 14.)  He also stated that SBA paid the full amount of the Debenture as guarantor on that date.  (*Id.* ¶ 15.)  The blank where the maturation date would be listed on the signed copy of the Debenture, however, is empty.  (*Id.* Attach. 4 at 1.)  In SBA's first letter to Mr. Hahn, dated September 2, 2005, regarding Defendant's default on the Debenture, the maturity date of the Debenture was listed as September 1, 2005.  (*Id.* Attach. 5.)  In SBA's second letter to Mr. Hahn, which is undated but allegedly delivered on December 2, 2005, SBA informs Mr. Hahn that the Debenture was placed in "On Demand" status on March 1, 2003.  (*Id.* Attach. 6.)  Regardless, it is uncontested that, as of September 1, 2005, the Debenture had matured and was not yet repaid.

[10]In this aspect, Plaintiff was being generous.  Plaintiff informed Defendant that it had fifteen days to cure its non-payment of the Debenture pursuant to 13 C.F.R. § 107.1810(g)(2)(i) (2006), which requires SBA to give defaulting SBICs fifteen days to cure any non-payment.  That regulation, however, applies only to debentures issued after April 25, 1994.  13 C.F.R. § 107.1810(a) (2006).  The Debenture in this case was issued on March 24, 1993, and as such was governed by 13 C.F.R. § 107.203(b) (1991), which has no fifteen-day opportunity-to-cure provision.

September 15, 2005. (*Id.* Attach. 6.)  It also had suggested repayment terms to Plaintiff by letter on August 25, 2005, and September 9, 2005.  Plaintiff rejected those terms, declared all of Defendant's outstanding debt to SBA immediately due and payable, and notified Defendant that it would seek all available remedies to resolve the debt, including the appointment of SBA as a receiver.[11]  (*Id.*)  Thus, as of December 2, 2005, Plaintiff was in default on the Debenture.  Defendant did finally pay, in full, its outstanding debt on the Debenture; however, the final payment was not made until September 1, 2006, nearly one year after it was notified that the Debenture was due.

Though there is little case law on SBA injunctions and receiverships, courts unanimously agree that a later correction of a previous default does not eliminate the fact that the regulations were violated at the time the debt matured.  *See United States v. Vanguard Inv. Co.* (*Vanguard II*), 694 F. Supp. 1219, 1225 (M.D.N.C. 1988) ("[A]n after-the-fact correction of a regulatory violation does not 'cure' it.");  *United States v. Coleman Capital Corp.*, 295 F. Supp. 1016, 1020

---

[11]Defendant claims that its failure to timely repay the Debenture is the result of negligence on the part of SBA.  In his affidavit, Hahn asserts that Defendant's Debenture first came due in March 2003, but that, on the recommendation of his SBA analyst, Janna Laudato, he applied to "roll over" the Debenture into a new Debenture.  (Hahn Aff. ¶ 4.)  Defendant was never informed as to whether his "roll over" application was accepted.  (*Id.*)  During an independent audit in 2004, Defendant's auditor inquired about the status of the Debenture and was informed that it had in fact been extended, but that due to SBA neglect SBA had failed to collect interest during the rollover period.  (*Id.*)  Hahn states that the auditor calculated the owed interest and Defendant immediately made payment.  (*Id.*)  Even if there was sufficient evidence in the record to support the conclusion that Plaintiff failed to inform Defendant about the status of its "roll over" application, however, this does not excuse Defendant's failure to repay the Debenture on September 1, 2005.  At the very least, according to Mr. Hahn, he was informed in 2004 by the independent auditor that his Debenture had been extended.  (*Id.*)  However, on September 1, 2005, the purportedly new maturation date, Defendant still failed to make payment.  Thus, it is indisputable that Defendant had failed to abide by SBA regulations regarding the Debenture, and that, as of September 16, 2005, if not earlier, SBA had the right to make the debt immediately due and payable.  *See* 13 C.F.R. § 107.203 (1991); 13 C.F.R. § 107.1810 (2006).

(N.D. Ill. 1969) ("The defendant's interpretation of the statute . . . would permit a licensee to disregard the Act and the regulations with impunity, so long as violations are 'cured' by the time the S.B.A. discovers them."). Thus, the fact that Defendant later paid the Debenture does not cure the fact that it failed to do so upon maturation, as it was legally obligated to do.

Defendant also disputes the second and third alleged violations of SBA rules and regulations. In his affidavit, Hahn contends that the three loans where a "business-use" could allegedly not be established were in fact provided for business uses. (Hahn Aff. ¶ 8.) He has provided receipts that, though vague, appear to support his contention that these loans went to business modifications or investment. (*Id.* Exs. B-F.) Plaintiff alleges that these loans were issued in violation of 13 C.F.R. § 107.500 (2006), which reads in full: "You must engage only in the activities contemplated by the Act and in no other activities." As it provides no basis for its conclusions that these loans were in violation of SBA rules and regulations or constituted activities not "contemplated by the Act," it is impossible to determine, at this time, whether Defendant's actions were in violation of those rules and regulations.

Plaintiff also contends that Defendant issued loans in violation of SBA's valuation guidelines, in violation of 13 C.F.R. § 107.503. Defendant disputes whether it issued any loans in violation of the valuation guidelines. (Hahn Aff. ¶ 9; Laudato Aff. ¶ 19.) Again, however, Plaintiff provides no evidence that these loans were improperly issued. Therefore, Plaintiff has failed to show that these actions were in violation of SBA rules and regulations.

Finally, though Defendant may in fact be in a better position to manage its loan portfolio, discussed *infra*, it is irrelevant to the issue of whether Defendant has violated SBA regulations. The question of whether Defendant is in a better position to recover its outstanding loans is relevant to whether the Court should grant injunctive relief, assuming such relief is discretionary,

10

but it does not address the issue of whether Plaintiff has made the only required showing under 15 U.S.C. § 687c(a), that Defendant was engaged "in any acts or practices which constitute or will constitute a violation of [SBA rules and regulations]."

As Plaintiff has shown that Defendant is in violation of SBA rules and regulations by failing to timely pay the Debenture and by its continuing failure to redeem the Preferred Stock, Plaintiff is entitled to move this Court for "an order enforcing compliance with such provision, rule, regulation, or order [that is being violated by Defendant]."  15 U.S.C. § 687c.

### 3.  Is Injunctive Relief Mandatory or Discretionary?

Plaintiff has requested injunctive relief, a remedy clearly contemplated by section 687c. Although Plaintiff has made the required showing for an issuance of such an order under section 687c, the Parties dispute whether injunctive relief is mandatory or discretionary.  Plaintiff relies on cases which emphasize the word "shall" in section 687c to argue that an injunction must be granted once the specific showing outlined in that section has been met.  *See, e.g.*, *Vanguard I*, 667 F. Supp. at 261-62.  Defendant argues that section 687c did not displace the traditional equitable powers of the Court, and that equitable relief is traditionally a discretionary remedy. Defendant's argument has two components.  First, Defendant relies on the only Court of Appeals decision addressing SBA receiverships, *First Louisiana Investment Corporation v. United States*, which says, matter-of-factly, "[t]he appointment of a receiver, like the granting of a preliminary injunction is, in no small measure, a discretionary matter."  351 F.2d 495, 497-98 (5th Cir. 1965).  Second, Defendant argues that reading section 687c to require the issuance of an injunction would make the phrase "or other order" in the statute mere surplusage.

Defendant's first argument, that the mandatory language of section 687c does not displace the Court's traditional discretion regarding equitable relief, has little support beyond

11

*First Louisiana*.  Defendant correctly notes that the Supreme Court has held that courts are to be protective of their equity powers, and that a grant of jurisdiction to enforce a federal statute does not necessitate injunctive relief.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law.").  In that case, however, the statute at issue did not discuss injunctive relief at all; it was silent on how the statute that was allegedly violated would be enforced.  *See id.* at 311 n.6.  Thus, the Supreme Court did not hold that a court's discretion over issuing equitable remedies trumps a specific Congressional mandate for injunctive relief; rather, it merely held that the existence of a federal statutory prohibition does not require federal courts to use their equitable powers to robotically enforce every federal statute through injunctive relief.  *See id.* at 313.

*First Louisiana* offers more support to Defendant's position.  In that case, the Fifth Circuit considered an appeal from a district court's preliminary injunction enjoining a company that had defaulted on a debt to SBA from diverting assets out of the company.  351 F.2d at 497.  The court also appointed a receiver to manage the company.  *Id.*  The defendant challenged the injunction, arguing that the evidence offered by SBA of regulatory violations, an affidavit attached to the complaint, was insufficient to establish a regulatory violation justifying injunctive relief under section 687c.  The Fifth Circuit affirmed, holding that the evidence was sufficient to support the district court's order.  *Id.* ("Where, as here, the district court has held a hearing where an opportunity was afforded the defendant to submit evidence, it is not error for the court, in the exercise of its discretion, to grant a preliminary injunction upon a showing made by affidavit.").  Later in its opinion, when discussing the district court's appointment of a

12

receiver, the court stated "[t]he appointment of a receiver, like the granting of a preliminary injunction is, in no small measure, a discretionary matter." *Id.*

All of this lends some support to Defendant's argument, as it is clear that the Fifth Circuit did not believe that the statute mandated an injunction. This, however, is not all the court stated, as it also rejected an argument by the defendant that the statute had not displaced the common law requirements for invoking the "extraordinary remedy" of receivership. Specifically, the court held "[i]t is our opinion that where a licensee has engaged in violations of the Act or of rules, regulations, or orders issued pursuant to the Act, the court has the power, under the statute, to appoint a receiver as well as to grant injunctive relief." Thus, although it is clear that the Fifth Circuit thought that injunctive relief was discretionary, it was also clear that it held that section 687c displaced the traditional standards for equitable relief. None of this is dispositive, however, as the issue before the court in that case was not the same as the issue here. In *First Louisiana*, the question was simply whether a court *could* grant equitable relief based on the standards outlined in section 687c. Here, the question is not whether equitable relief is permitted, but whether it is required.

Most district courts that have considered that issue, though admittedly there are not a great number, have held that some type of equitable relief is required once SBA demonstrates a legal violation. *See United States v. Marathon Inv. Partners*, 399 F. Supp. 2d 1, 3 (D. Mass. 2005) ("[A]s specifically mandated under 15 U.S.C. § 687c(a) the SBA is entitled to a permanent injunction."); *Vanguard II*, 694 F. Supp. at 1227-28 (emphasizing "shall" in text of section 687c(a)); *Vanguard I*, 667 F. Supp. at 261-62 (same). Other courts, while not specifically stating that equitable relief is required, have granted such relief upon similar facts to those here. *See, e.g.*, *United States v. Boca Raton Capital Corp.*, 285 F. Supp. 504, 507 (S.D. Fla. 1968) ("This

13

Court concludes as a matter of law that the aforesaid adjudicated violations of [SBA regulations] are sufficient . . . for this Court to issue an injunction [and] appoint a Receiver."); *United States v. Norwood Capital Corp.*, 273 F. Supp. 236, 241 (D.S.C. 1967) ("A survey of the present status of affairs invites, commands, this court to use its equity powers.").  This result is understandable, as courts have regularly interpreted "shall" to require some action.  *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) (noting use of "shall" indicated "discretionless obligations"); *United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999) (describing "shall" as a "compulsory term"); *see also* Black's Law Dictionary 1407 (8th ed. 2004) ("shall, vb. 1. Has a duty to; more broadly, is required to . . . . This is the mandatory sense that drafters typically intend and that courts typically uphold.").  Indeed, Defendant has not cited a single case where a court has denied some type of equitable relief to SBA after the required showing has been made.

Defendant responds by arguing that to read the statute to require the issuance of an injunction, as Plaintiff requests, would make the phrase "or other order" in the statute's mandate that "a permanent or temporary injunction, restraining order, or other order, shall be granted" surplusage.  Defendant argues that phrase thus requires the Court to read the statute's mandate for relief as discretionary.  "Shall" in the statute does not merely modify injunction, however, it modifies the whole list of potential orders.  Thus, if the statute is read to mandate some type of relief, rather than merely the injunctive relief requested by SBA in this case, the alleged "surplusage" disappears.  Although relief is mandatory, the type of relief is left up to this Court to determine.  *See United States v. Clinton Capital Corp.*, 748 F. Supp. 231, 234 (S.D.N.Y. 1990) ("[I]t is the Court's prerogative to determine what relief requested in the complaint is appropriate under the circumstances.").  This reading best balances the express language of the statute with the Court's traditional discretion to fashion equitable remedies as it deems just.

14

Thus, the Court finds that, as SBA has made a sufficient showing of regulatory violations in this case, section 687c requires the Court to grant some type of relief.  That relief may include, as noted in 15 U.S.C. § 687c(b)-(c), taking exclusive jurisdiction of Defendant and the appointment of a receiver to administer Defendant's assets.  It bears noting, however, that even if injunctive relief is not required, the Court would exercise its discretion to grant the relief discussed below.

B.  Motion to Appoint a Receiver

1.  Standard of Review

Section 687c(c) states that "[t]he [SBA] shall have authority to act as trustee or receiver of the licensee.  Upon request by the [SBA], the court may appoint the [SBA] to act in such capacity unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved."  No Party contests that the decision to appoint a receiver is discretionary.  Under the law of the Second Circuit, "the appointment of a receiver is considered to be an extraordinary remedy, and . . . should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property."  *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988)).  The following factors are relevant in the appointment of a receiver:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

15

*Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (quoting 12 Charles A. Wright

& Arthur R. Miller, Federal Practice and Procedure § 2983 (1999)).  Although these factors must

be adjusted to fit the context of SBA receiverships and the mandate of section 687c to provide

some type of relief, they serve as a useful starting point for evaluation.

                  2.  Analysis

        Plaintiff argues that receivership is warranted by Defendant's continued failure to pay its

debt to Plaintiff.  Plaintiff also argues that this continued failure to repay is evidence that

Defendant's current management is not suited to administer its assets.  Defendant counters that

two special circumstances justify leaving Defendant under the control of its current

management:  (1) appointment of SBA as receiver will result in increased defaults by

Defendant's debtors, because it will signal Defendant's weak financial position and because

Defendant's current management has a unique relationship with the Korean-owned businesses

that are its clients; (2) SBA is incompetent as a receiver.  These arguments boil down to a single

theme:  Defendant's current management is more likely to recover Plaintiff's funds than SBA.

        Such claims are not new.  The United States District Court for the District of

Massachusetts rebuffed an identical claim in *Marathon*.  399 F. Supp. 2d at 1.  In that case, the

court rejected the defendant's request to self-liquidate after receiving briefing from both parties

as to how they would proceed with the liquidation.  *Id.* at 3.  The court held that self-liquidation

failed to address how the defendant would repay SBA and improperly permitted retention of the

current management of the defendant SBIC, as it was management's failure to honor the SBIC's

commitments that had led to the receivership request in the fist place.  *Id.*  Other courts have

reached similar conclusions.  *See Vanguard II*, 694 F. Supp. at 1227-28; *Vanguard I*, 667 F.

Supp. at 263; *Norwood*, 273 F. Supp. at 238-42.[12]  Defendant has not cited a single case where the appointment of a receiver was denied.

The facts merit appointing a receiver in this case.  Defendant has defaulted, and continues to be in default, on a large obligation to Plaintiff.  Although there is no evidence of fraud on the part of Defendant's current management, Defendant has also failed to demonstrate any concrete plan for recovering its debts, other than seeking to borrow more funds.  This is an insufficient guarantee, and would leave SBA with insufficient means to recover what it is owed.  In addition, although Defendant cites an Inspector General's report that is critical of SBA's Office of Liquidation, there is no evidence that SBA is incompetent or cannot be placed in charge of recovering its debt.  As this Court has the power to take exclusive jurisdiction of Defendant, it is in a unique position to monitor SBA costs, and may take additional action as necessary.  Finally, although SBA certainly will be less familiar with Defendant's current portfolio than Defendant, that is true whenever a court has to go to the extraordinary means of appointing a receiver.  In short, none of Defendant's arguments constitute "special circumstances" that would justify this Court finding SBA to be unqualified to act as Defendant's receiver.  *See* 15 U.S.C. § 687c(c).

One additional point merits discussion, however.  The Court is persuaded by Defendant's argument that the President of Trusty, Mr. Hahn, has a unique relationship with Defendant's clientele.  Although this is insufficient to justify leaving Defendant's assets entirely in his hands, Mr. Hahn has unique experience that would be useful in the recovery of Defendant's assets.  In addition, Mr. Hahn has a large personal stake in Defendant, as he owns tens of thousands of

---

[12]In every other case cited to the Court regarding SBIC defaults on SBA debt obligations, a receiver was appointed.

shares of Defendant's common stock that are subordinate to Plaintiff's Preferred Stock. Additional shares of Defendant's common stock are owned by Mr. Hahn's friends and family, thus giving Mr. Hahn a strong incentive to recover as much of Defendant's assets as possible. (Hahn Aff. ¶ 9.)  Therefore, SBA should continue to work with Mr. Hahn to recover Defendant's assets.  This can be done, for example, by the Receiver hiring Mr. Hahn as a special consultant to assist in the collection of Defendant's loans.  Final decision-making authority will lie with the Receiver, but the Receiver is to consider, in good faith, Mr. Hahn's input.

### III.  Conclusion

For the reasons outlined in this opinion, Plaintiff's Motion for a Preliminary Injunction and to Appoint Receiver is GRANTED.  It is hereby

ORDERED that, pursuant to its authority under 15 U.S.C. § 687c(b), this Court takes exclusive jurisdiction of Defendant, Trusty Capital, Inc., and all of its assets wherever situated, and it is further

ORDERED that Defendant, its past and/or present officers, agents, employees and creditors, or any other individual or entity having knowledge of or control over any of Defendant's current or former assets, are enjoined from encumbering, conveying, disposing, levying, executing or in any other manner dealing with any of the assets of Defendant wherever situated and from further violating the Small Business Investment Act of 1958, as amended, and the regulations promulgated thereunder, pending disposition of the merits of this action.  It is further

ORDERED that both Parties should confer and submit a joint proposal for the appointment of SBA as receiver, and it is further

ORDERED that said proposal shall include a provision that allows Mr. Yungduk Hahn, current president of Defendant, to be retained as a consultant by the Receiver at market rates for use of his services in collecting on loans issued by Defendant.

SO ORDERED.

Dated:      January 5, 2007
             New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

19

Service List:

Roslyn R. Mauskopf, Esq.
William B. Young, Esq.
United States Attorney's Office
Eastern District of New York
1 Pierrepont Plaza
14th Floor
Brooklyn, NY 11201
Fax: (718) 254-6081

Andrea L. Mayer, Esq.
United States Small Business Administration
409 3rd St, Sw
Washington, DC 20416
Fax: (202) 481-0210

Paul Scott Skurman, Esq.
William F. McCartin, Esq.
Sankel, Skurman & McCartin, LLP
750 Third Avenue
New York, NY 10017
Fax: (212) 682-2474

R. Michael Haynes, Esq.
Semmes, Bowen & Semmes
1001 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
Fax: (410) 539-5223